UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LUCKEY,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF PORTERVILLE, et al.,<br><br>            Defendants. | Case No.  1:23-cv-00551-BAM<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS<br><br>(Doc. 21) |

Plaintiff alleges that he was subjected to racial discrimination while employed by the Porterville Police Department.  (Doc. 20.)  He asserts violations of California's Fair Employment and Housing Act ("FEHA"), Title VII of the Civil Rights Act, and the United States and California Constitutions against the City of Porterville and Bruce Sokoloff ("Sokoloff") (collectively "Defendants").  (*Id.*)

Defendants move to dismiss all claims in Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 21 at 1-2.)  Plaintiff opposes dismissal, asserting the Second Amended Complaint states facts sufficient to survive a motion to dismiss for failure to state a claim.  (Doc. 32.)  The matter was not calendared for hearing, and the Court finds the motion suitable for decision without oral argument pursuant to Local Rule

1

230(g).[1]  For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

**I.       Summary of Second Amended Complaint**

Causes of Action

Plaintiff forwards the following causes of action:  (1) race discrimination in violation of Title VII against Defendant City of Porterville; (2) deprivation of civil rights in violation of 42 U.S.C. § 1983 against Defendants City of Porterville and Sokoloff; (3) race discrimination in violation of the California Constitution against Defendant City of Porterville; and (4) race discrimination in violation of FEHA against Defendant City of Porterville.

Allegations

Plaintiff accepted a position as a patrol officer with the Porterville Police Department in the fall of 2020.  (Doc. 20, Second Amended Complaint ("SAC") ¶ 14.)  For the next few months, Plaintiff was repeatedly told he was doing a great job, and the Porterville Police Department was glad he joined the team.  (*Id.*)  After Sokoloff, an employee of the Porterville Police Department, "learned that Plaintiff was dating Porterville Police Officer Ana Moreno, a White female officer, he made clear he did not approve of her dating Plaintiff, a Black officer.  On multiple occasions, Sokoloff asked Ms. Moreno inappropriate questions concerning her relationship with Plaintiff and expressed his disapproval.  When Ms. Moreno refused to terminate her relationship with Plaintiff, Sokoloff retaliate[ed] against her."  (*Id.*, ¶ 16.)

Sokoloff "used his position" as a Porterville Police Department Sergeant and his influence with the Porterville Police Department administration "to conduct a discriminatory campaign to create a pretext to fire Plaintiff.  That campaign included a number of unfounded criticisms and warnings concerning Plaintiff's performance.  After Plaintiff began dating a white, female co-worker, he was written up on at least six occasions."  (SAC ¶ 17.)  Sokoloff ultimately conducted a bogus "investigation" that resulted in Plaintiff's termination.  (*Id.*)

**II.      Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

---

[1] The parties have consented to magistrate judge jurisdiction over this action for all purposes, including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 27, 28, 30.)

dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). A court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

///

///

3

**III.     Discussion and Analysis**

       **A.  First and Fourth Claims (Race Discrimination)**

Defendants argue that Plaintiff's first and fourth claims alleging race discrimination under Title VII and FEHA, respectively, must be dismissed because Plaintiff fails to plead a prima facie case based on a disparate treatment theory.  (Doc. 21 at 8-9.)

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[2]  "A plaintiff may show discrimination in violation of Title VII by proving disparate treatment or impact, or by establishing the existence of a hostile work environment." *Kurdi v. California Dep't of Transportation*, No. 1:22-cv-00729 JLT EPG, 2023 WL 267538, at *13 (E.D. Cal. Jan. 18, 2023).  Plaintiff appears to assert a discrimination claim based on disparate treatment.  (Doc. 32 at 3-4.)

To articulate a prima facie case of disparate treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Lee v. Foothill-De Anza Cmty. Coll. Dist.*, No. 23-CV-03418-PCP, 2024 WL 2013611, at *7 (N.D. Cal. May 7, 2024) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see also Davis v. Advance Servs., Inc.*, No. 2:22-cv-00343-MCE-JDP, 2023 WL 4670104, at *3 (E.D. Cal. July 20, 2023) (quotation and citation omitted), ("To state a prima facie case of discrimination under the FEHA, a plaintiff must allege and ultimately show that: (i) [he] was a member of a protected class; (ii) [he] was qualified for the position [he] sought or was performing competently in the position [he] held; (iii) [he] suffered an

---

[2] "FEHA uses largely the same language and promotes the same objective as Title VII," and "the Title VII framework is applied to claims brought under . . . FEHA, including discrimination claims brought under a disparate treatment theory." *Freeling v. PCX, Inc*., No. 8:23-cv-00173-DOC-KES, 2023 WL 6194259, at *4 (C.D. Cal. Aug. 15, 2023.  The Court will therefore assess Plaintiff's Title VII and FEHA claims under the Title VII framework and federal law.

1  adverse employment action; and (iv) the employer acted with a discriminatory motive.").

2      "[A]lthough a plaintiff alleging employment discrimination is not required to allege a
3  prima facie case to survive a motion to dismiss, the prima facie elements are nonetheless valuable
4  in determining whether plaintiff has alleged sufficient facts to state a claim that is plausible and
5  not merely speculative." *Albro v. Spencer*, No. 1:18-cv-01156-DAD-JLT, 2019 WL 2641667, at
6  *6 (E.D. Cal. June 27, 2019) (acknowledging that the prima facie case under *McDonnell Douglas*
7  is an evidentiary standard, not a pleading requirement); *see also Kurdi*, 2023 WL 267538, at *5
8  ("Although a prima facie case need not be established at the pleading stage, *Swierkiewicz v.*
9  *Sorema N. A.*, 534 U.S. 506 (2002), a complaint still must state a plausible claim sufficient to put
10 the defendant on notice of the claim and the grounds it rests upon."); *Lee v. Hertz Corp.*, 330
11 F.R.D. 557, 561 (N.D. Cal. 2019) ("Plaintiffs need not prove the prima facie elements to survive a
12 motion to dismiss, but must plead the general elements to make a claim facially plausible.").

13     The parties dispute whether Plaintiff adequately pleads the fourth element of a
14 discrimination claim, with Plaintiff contending that the SAC alleges "other circumstances
15 surrounding the adverse employment action" that give rise to an inference of discrimination.
16 (Doc. 32 at 4.)  Namely, Plaintiff asserts that the SAC alleges that "(1) Plaintiff received universal
17 praise for his performance prior to it becoming known he was dating a white female co-worker,
18 (2) the white woman he was dating was told by Defendant Sokoloff that it was inappropriate for
19 her to be dating Plaintiff and threatened to get her fired, although the Porterville Police
20 Department did not have any rule prohibiting officers from dating each other, and (3) it was
21 Defendant Sokoloff who conducted the bogus investigation that resulted in Plaintiff's
22 termination." (*Id.*)

23     The Court finds that Plaintiff has failed to adequately plead the fourth element of a
24 disparate treatment claim.  First, Plaintiff fails to include any allegations that similarly situated
25 individuals outside of Plaintiff's protected class received more favorable treatment. Second,
26 Plaintiff fails to adequately allege "other circumstances" giving rise to an inference of
27 discrimination.  Plaintiff appears to rely on allegations that Sokoloff asked Ms. Moreno
28 "inappropriate questions concerning her relationship with Plaintiff" and "made clear he did not

approve of her dating Plaintiff." (SAC ¶ 16.) There are no allegations in the SAC that the "inappropriate questions" mentioned race or that Sokoloff "expressed his disapproval" because of the interracial dating relationship.

Additionally, Plaintiff's allegations are generally conclusory in nature. For instance, the SAC summarily concludes that Sokoloff "used his position" to "conduct a discriminatory campaign" against Plaintiff. (SAC ¶ 17.) However, there are no allegations articulating what Sokoloff did that reportedly subjected Plaintiff to a "discriminatory campaign." While the SAC describes the "campaign" to include "a number of unfounded criticisms and warnings concerning Plaintiff's performance" and that Plaintiff "was written up on at least six occasions," there are no factual allegations indicating that Sokoloff was directly involved in the criticisms, warnings, or write ups, or linking Sokoloff to those actions. (SAC ¶ 17.) The SAC also summarily concludes that Sokoloff conducted a "bogus 'investigation'" that resulted in Plaintiff's termination. (SAC ¶ 17) Again, however, there are no factual allegations relevant to the "investigation." The Court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. The Court therefore concludes that the SAC fails to allege sufficient factual matter to state a claim for discrimination under Title VII or FEHA that is plausible on its face. *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Plaintiff's discrimination claims premised on theory of disparate treatment is GRANTED. This dismissal will be with leave to amend.

### B. Second Claim (*Monell*)

Defendants move to dismiss Plaintiff's second claim for relief under 42 U.S.C. § 1983 against the City of Porterville because Plaintiff has not sufficiently pled *Monell* liability. (Doc.21 at 9-10.) In opposition, Plaintiff argues that he adequately alleges the grounds for the City of Porterville's liability based on ratification of Sokoloff's conduct. (Doc. 32 at 4-5.)

Municipalities "cannot be held liable [for the actions of their employees] under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 591 (1978). Instead, the constitutional injury must occur during the execution of an official "policy or custom." *Id.* at 694. "A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a

1  'longstanding practice or custom which constitutes the standard operating procedure of the local
2  government entity'; (3) the act of an 'official whose acts fairly represent official policy such that
3  the challenged action constituted official policy'; or (4) where "an official with final policy-
4  making authority 'delegated that authority to, or ratified the decision of, a subordinate.'"
5  *Bustamante v. County of Shasta*, No. 2:23-cv-01552-TLN-DMC, 2024 WL 3673529, at *2 (E.D.
6  Cal. Aug. 6, 2024) (quoting *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)).

       Only ratification appears to be at issue. (*See* Doc. 32 at 4-5.)  A municipality may be liable under this theory if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–1347 (9th Cir. 1992). "Ratification requires that the policymaker engage in a 'conscious, affirmative choice' to endorse a subordinate's conduct." *Bustamante*, 2024 WL 3673529 at *3, quoting Gillette, 979 F.2d at 1347.

       In the SAC, Plaintiff alleges Sokoloff acted "with the full knowledge and support of the highest levels of the Porterville Police Department, who as the authorized policymakers for the Porterville Police Department had knowledge of Defendant Sokoloff's unconstitutional conduct that led to Plaintiff's officially approved termination."  (SAC ¶ 25.)  This allegation alone is conclusory and is insufficient to state a *Monell* claim against the City of Porterville based upon ratification. *Bustamante*, 2024 WL 3673529, at *3 (concluding that allegations certain officials with final policy-making authority had "direct knowledge of the facts of this incident" and "made a deliberate choice to endorse the decisions of [probation department employees] and the basis for those decisions" were "unclear, conclusory, and insufficient to state a *Monell* claim . . . based upon ratification"); *Thurston v. City of Vallejo*, No. 2:19-CV-1902-KJM-CKD, 2021 WL 1839717, at *6 (E.D. Cal. May 7, 2021) (finding that "simply listing a number of high-ranking individuals is not sufficient to allege a specific final policymaker" and "allegations that the policymakers 'ratified' or 'knew and/or reasonably should have known about' the alleged constitutional violations are conclusory").

       Accordingly, the Court concludes that Plaintiff has failed to state a plausible *Monell* claim.  Defendants' motion to dismiss the *Monell* claim against the City of Porterville is

7

1  GRANTED.  The *Monell* claim will be dismissed with leave to amend.

### C.  Second Claim (Qualified Immunity)

Defendants argue that Sokoloff is entitled to qualified immunity on Plaintiff's second claim for relief alleging violation of his right of intimate association secured to him by the First Amendment to the United States Constitution.[3]  (Doc. 21 at 11-12.)

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

A right is "clearly established" when its bounds are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Indeed, "in an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

The Supreme Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  This freedom of intimate

---

[3] Plaintiff's second claim alleges unlawful conduct by "intentionally discriminating against him on the basis of his race and interfering with his intimate relationship with a white, Hispanic, female co-worker." (SAC ¶ 25.)  By this order, the Court grants leave to amend as to the claims based on race discrimination. Therefore, the issue of qualified immunity is focused on the alleged right to intimate association.

8

association "receives protection as a fundamental element of personal liberty."  *Id.* at 618; *see also Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte ("Rotary Club")*, 481 U.S. 537, 545 (1987) (identifying that the Supreme Court "has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights.").  Further, the Supreme Court has "emphasized that the First Amendment protects those relationships...that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"  *Rotary Club*, 481 U.S. at 545 (quoting *Roberts*, 468 U.S. at 619–20).  Although the Supreme Court has "not attempted to mark the precise boundaries of this type of constitutional protection," the intimate relationships that have been "accorded constitutional protection include marriage; the begetting and bearing of children; child rearing and education; and cohabitation with relatives."  *Id.* at 545 (internal citations omitted).  However, the constitutional protection is not restricted to relationships among family members.  *Id.*  The Supreme Court has explained that qualifying relationships "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."  *Roberts*, 468 U.S. at 620; *see also Rotary Club*, 481 U.S. at 545 (determining whether a particular association is sufficiently personal or private to warrant constitutional protection requires consideration of "factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship"); *see Mann v. City of Sacramento*, No. 21-15440, 2022 WL 2128906, at *1 (9th Cir. June 14, 2022) ("Neither *Rotary Club* nor its progeny extended the First Amendment to cover [intimate-association claims brought by adult siblings].").

Relevant here, Plaintiff's SAC alleges that Plaintiff was "dating" Ms. Moreno.  (SAC ¶ 25.)  Defendants contend that applying the relevant *Roberts* factors, there are no allegations that Plaintiff's dating of Ms. Moreno maintained "a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."  (Doc. 21 at 12.)  Defendants therefore characterize Plaintiff's relationship as akin to a close

1  friendship, and assert that neither the Supreme Court nor the Ninth Circuit has recognized
2  "dating" or a friendship, however close, as sufficiently intimate to warrant constitutional
3  protection.  (*Id.*, citing *Hittle v. City of Stockton*, 2018 WL 1367451 (E.D. Cal 2018).)
4  Defendants conclude that in the absence of such authority, Plaintiff's alleged right to intimate
5  association was not clearly established at the time of the challenged conduct, and Sokoloff is
6  entitled to qualified immunity.

7  In opposition, Plaintiff does not challenge Defendants' assertion that the SAC fails to
8  allege that Plaintiff's dating relationship maintained "a high degree of selectivity in decisions to
9  begin and maintain the affiliation, and seclusion from others in critical aspects of the
10 relationship."  Plaintiff also does not challenge Defendants' characterization of Plaintiff's
11 relationship as a close friendship.  Plaintiff instead argues that Sokoloff is not protected by
12 qualified immunity because "Defendants ignore the fact that as early as 1983 the Supreme Court
13 condemned a university's rule that prohibited interracial dating," citing *Maini v. I.N.S.*, 212 F.3d
14 1167, 1175 (9th Cir. 2000) and *Bob Jones University v. United States*, 461 U.S. 574, 580 (1983).
15 (Doc. 32 at 5.)  Plaintiff asserts that in "this day and age, Defendants' claim that Sokoloff is
16 protected by qualified immunity because he would not have known that penalizing an interracial
17 couple for dating is unconstitutional cannot be given any credence."  (*Id.*)

18 Plaintiff has the burden of showing that the constitutional violation was clearly established
19 by defining the law at issue in a concrete, particularized manner. *Shafer v. County of Santa*
20 *Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017) (stating that the plaintiff bears the burden of
21 showing that the rights allegedly violated were clearly established); *Gordon v. County of Orange*,
22 6 F.4th 961, 969 (9th Cir. 2021) ("[t]he plaintiff bears the burden of proving that the right
23 allegedly violated was clearly established" at the time of the violation). A case directly on point is
24 not necessary to defeat qualified immunity, but existing case law must have put "every reasonable
25 official" on notice that the conduct was unconstitutional. *Martinez v. High*, 91 F.4th 1022, 1031
26 (9th Cir. 2024).

27 Plaintiff has not identified any authority that has applied the relevant *Roberts* factors
28 discussed above and held that "dating" or a close friendship is sufficiently intimate to warrant

10

constitutional protection. *See Hittle v. City of Stockton*, No. 2:12-cv-00766-TLN-KJN, 2018 WL 1367451, at *15 (E.D. Cal. Mar. 16, 2018) (identifying that neither the Ninth Circuit nor the Supreme Court has recognized a friendship, however close, as sufficiently intimate to warrant constitutional protection). Here, Plaintiff's broad identification of a clearly established right is insufficient. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-6 (2021) ("Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks and citations omitted)). In the absence of any such authority, Plaintiff's alleged right to intimate association was not clearly established at the time of the challenged conduct, and Sokoloff is entitled to qualified immunity. Consequently, Plaintiff's second claim for relief is dismissed with prejudice insofar as it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association.

### D. Third Claim (Race Discrimination in violation of California Constitution)

Plaintiff's third claim alleges race discrimination in violation of "Section 1 of the California Constitution." (SAC ¶ 29.)

Article 1, Section 1 of the California Constitution states:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

Cal. Const. Art. 1, § 1.

Defendants move to dismiss this claim, asserting that Section 1 does not support a race discrimination claim. Plaintiff has not cited case law suggesting Article 1, Section 1 provides for a claim based on race discrimination. Instead, Plaintiff argues that the amended complaint "clearly puts Defendants on notice that his Third Cause of Action is based upon the California Constitution's prohibition against race discrimination." (Doc. 32 at 5.) Plaintiff acknowledges that the amended complaint "cites the wrong section of the California Constitution," but argues

11

that this "is immaterial and could be corrected in response to a motion for a more definite statement." (*Id.* at 5-6.) Plaintiff suggests that Defendants had sufficient notice because defense counsel had actual knowledge that Plaintiff's cause of action was based upon Article 1, sections 8 and 31. (*Id.* at 6.)

Given Plaintiff's concession that the amended complaint cites the incorrect section of the California Constitution, Defendants' motion to dismiss Plaintiff's third claim for race discrimination in violation of Article 1, Section 1 of the California Constitution is GRANTED. As Plaintiff plausibly contends that the pleading deficiency can be cured by further amendment, this claim will be dismissed with leave to amend.

### IV. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given "when justice so requires," and courts are guided by "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (alterations and internal quotation marks omitted). The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, except where noted above, Plaintiff will be granted a **final opportunity** to amend to cure the identified pleading deficiencies.

### CONCLUSION AND ORDER

For the reasons stated, IT IS HEREBY ORDERED as follows:

1. Defendants' motion to dismiss (Doc. 21) is GRANTED as follows:

    a. Defendants' motion to dismiss Plaintiff's Title VII and FEHA discrimination claims premised on a theory of disparate treatment is **GRANTED**. These claims are **DISMISSED** with leave to amend.

    b. Defendants' motion to dismiss the *Monell* claim against the City of Porterville is **GRANTED**. The *Monell* claim is **DISMISSED** with leave to amend.

    c. Plaintiff's second claim for relief is **DISMISSED** with prejudice insofar as it

|   |   |   |
|---|---|---|
| 1 | | seeks money damages from Sokoloff in his individual capacity for allegedly |
| 2 | | infringing upon Plaintiff's right to intimate association. |
| 3 | d. | Defendants' motion to dismiss Plaintiff's third claim for race discrimination in |
| 4 | | violation of Article 1, Section 1 of the California Constitution is **GRANTED**. |
| 5 | | This claim is **DISMISSED** with leave to amend. |
| 6 | 2. | Plaintiff may file an amended complaint within twenty-one (21) days of the date |
| 7 | | of service of this order.  Defendants shall file any responsive pleading within |
| 8 | | fourteen (14) days from service of Plaintiff's amended complaint. |
| 9 | 3. | If Plaintiff fails to file an amended complaint, then the action may be dismissed |
| 10 | | without prejudice for failure to prosecute and failure to obey the Court's order. |

IT IS SO ORDERED.

Dated:   **September 30, 2024**              /s/ Barbara A. McAuliffe
                                             UNITED STATES MAGISTRATE JUDGE

13