Lawrence J. King, Esq., #120805
LAW OFFICES OF LAWRENCE J. KING
11 Western Avenue
Petaluma, CA 94952
Telephone: 707-769-9791
Fax: 707-769-9253
Email: kingesq@pacbell.net

Attorneys for Plaintiff Anthony Luckey

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| ANTHONY LUCKEY,<br><br>      **Plaintiff,**<br><br><br>v.<br><br><br>CITY OF PORTERVILLE and BRUCE SOKOLOFF<br><br>    **Defendants.** | CASE NO. 1:23-cv-00551-ADA-BAM<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |

Plaintiff Anthony Luckey ("Plaintiff") respectfully submits this his opposition to the motion to dismiss his Third Amended Complaint ("TAC") filed by Defendants City of Porterville and Bruce Sokoloff ("Defendants").

Plaintiff opposes Defendants' motion to dismiss on the following grounds: (i) Plaintiff has pleaded facts sufficient to satisfy both the "similarly situated" and the "other circumstances" prongs of his prima facie case for race discrimination based on disparate treatment; (ii) Defendants have raised no pertinent challenge to Plaintiff's claim for race discrimination under 42 U.S.C. Section 1983; and (iii) Defendants' argument that Article I, Sections 8 and 31 provide no private right of action for race discrimination is without legal merit and borders on frivolous.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case arises from the unlawful termination of a Black police officer by the City of Porterville Police Department ("PPD") due to Defendant Bruce Sokoloff's racist beliefs about inter-racial relationships and his opposition to Plaintiff's romantic relationship with a White female officer whom Sokoloff supervised and who had rebuffed Sokoloff's sexual advances.

Although when filing a motion under 12(b)(6), Defendants are required to accept as true the facts alleged in the TAC and may only argue that they are legally insufficient, here, Defendants rewrite the allegations contained in the TAC to serve their own needs; insert facts that Plaintiff has not alleged, assert allegations that may be relevant at a later stage of the case but have no bearing in a 12(b)(6) motion; and submit arguments to the Court premised entirely on their creative misreading of the TAC and erroneous reading of the prior Order of this Court granting Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC").

For example, Defendants argue that Plaintiff's "second claim" (for race discrimination in violation of the 14th Amendment) fails for two reasons: "because (i) this Court has already granted Defendants' motion to dismiss as to Sokoloff with prejudice, and (ii) Plaintiff's new theory of alleged violation of a right to associate with a member of another race is time-barred by the two-year statute of limitations." Dkt. 48 at 6:16-18. Neither statement is true as will be demonstrated herein, and the full briefing of both issues in its motion can be viewed either charitably as a mistake, or uncharitably as a delay tactic, on the part of Defendants.

Similarly, Defendants assert certain legal arguments in questionable faith and submit misleading and mischaracterized "authority" to the Court in support of those arguments. For example, and as will be discussed below, Defendants fail to inform the Court of a highly-relevant subsection of Article I, Section 31 of the California Constitution that expressly contradicts the argument they assert.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

If Plaintiff's counsel erred in his belief that sufficient facts were pleaded in the SAC to support that complaint, Plaintiff respectfully requests that he be allowed to follow the instruction provided in this Court's Order and present the additional facts that support his claims in the TAC.

## II.   PROCEDURAL HISTORY

The instant case has a history of incremental and surprise challenges by Defendants that have succeeded in protracting the litigation and obfuscating the issues in dispute.

On April 7, 2023, Plaintiff filed and served his initial complaint against Defendants. Dkt. 1. On May 12, 2023, Plaintiff's counsel received an email from Defendants' counsel, Sue Ann Renfro, containing "a listing of the issues which we believe subject [the] Complaint to a Motion to Dismiss and Motion to Strike." King Declaration, at ¶1. At that time and during the parties' meet and confer efforts, Defendants raised only two issues with respect to Plaintiff's Race Discrimination claims under Title VII and FEHA, namely Plaintiff's prayer for punitive damages, and those claims being directed against Defendant Sokoloff as an individual supervisor. King Declaration, at ¶2.

The remaining items raised by Defendants' counsel at that time involved Plaintiff's prayer for injunctive relief and the following discrete issues concerning his Section 1983 claim: *Monell* liability, Sokoloff's alleged qualified immunity, and defense counsel's mistaken assertion that the complaint "alleges discrimination as constitutional violations, which is improper." King Declaration, at ¶3. These three Section 1983 issues were not resolved between the parties at the conclusion of the meet and confer. *Id.* However, in drafting his First Amended Complaint ("FAC"), Plaintiff amended the punitive damages language to make it clear such damages were only being sought against Sokoloff *as requested by Defendants*, removed Sokoloff from the Title VII and FEHA race discrimination claims *as requested by Defendants*, and removed the prayer for injunctive relief *as requested by Defendants*. King Declaration, at ¶4.

On August 7, 2023, Plaintiff filed and served his FAC. Dkt. 14. On August 22, 2023, Plaintiff's counsel received a new meet and confer email from Ms. Renfro that claimed two grounds for a motion to strike and two grounds for a motion to dismiss, all of which only related

to Plaintiff's Section 1983 claim. King Declaration, at ¶5. Plaintiff responded to the Section 1983 concerns raised by Defendants by making additional changes to the punitive damages language in his Second Amended Complaint ("SAC") and explicitly identifying the Fourteenth Amendment in his Section 1983 claim to correct defense counsel's continued misunderstanding that the claim was based solely on the Title VII/FEHA discrimination. King Declaration, at ¶6. Plaintiff also responded to Defendants' question regarding the claim for race discrimination under "Section 1" of the California Constitution by explaining that the language would be corrected to "Article I, Sections 8 and 31."

At the time of filing and serving Plaintiff's SAC on September 6, 2023, Plaintiff's counsel believed in good faith that all issues concerning two of his claims, specifically Race Discrimination in violation of Title VII and Race Discrimination in violation of FEHA, had been resolved to Defendants' satisfaction <u>because Defendants raised no issues concerning any of those two claims in their second meet and confer notice or during conference with Plaintiff's counsel</u>. King Declaration, at ¶8.

Yet, on September 27, 2023, Defendant filed a motion to dismiss the entire SAC, including the two claims for which Plaintiff's counsel had made every amendment requested of him and to which no challenges had been raised after filing of the FAC. King Declaration, at ¶9. The Notice of Motion misrepresented the facts by asserting, "[b]ecause Plaintiff has already had several opportunities to plead these claims for relief, and because Plaintiff cannot demonstrate that the foregoing deficiencies can be cured by amendment, Defendants respectfully seek dismissal of Plaintiff's SAC with prejudice and without leave to amend." Dkt. 21, at 2:11-14.

The Meet and Confer Certification contained in Defendants' motion to dismiss stated, "Pursuant to the Court's standing order, the parties engaged in pre-filing meet and confer as to the Plaintiff's initial and first amended pleading," but neglected to inform the Court that the majority of substantive issues presented in their motion had never been raised during those meet and confers. Dkt. 21, at 2:19-20. It then falsely asserted, "*[r]ather than correcting the deficiencies*

*raised by Defendants' counsel*, Mr. King used the opportunity to add a new claim and theories."
Dkt. 21, at 2:22-23 (emphasis added).

On September 30, 2024, the Court entered its order granting Defendants' motion to dismiss the SAC, and also granting Plaintiff leave to amend his first and fourth claims alleging race discrimination, his second claim under 42 U.S.C Section 1983 based on race discrimination, and his third claim for race discrimination under Article I of the California Constitution. Dkt. 37, at 12:22-13:5.

On November 8, 2024, Plaintiff filed his TAC. Dkt. 43. On December 6, 2024, Defendants filed this motion to dismiss. Dkt. 48.

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)

In considering a motion to dismiss, a court must treat all allegations of material fact in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

"Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising it discretion to deny leave to amend, "a court must

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

## IV.  LEGAL ARGUMENT

### A.  PLAINTIFF'S FIRST AND FOURTH CLAIMS FOR RACE DISCRIMINATION

#### 1.  Disparate Treatment

Defendants argue that Plaintiff has failed to plead that similarly situated individuals outside his class were treated more favorably. Dkt. 48, at 13:7-9.

"Individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Plaintiff has pleaded in the TAC that he and the five White officers had similar jobs – they were all Officers. TAC, at 5:13,19, 6:22, 7:15. Plaintiff has also pleaded that he and the five White officers displayed similar conduct – they had all engaged in pursuits. *See Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2021) (holding that when two police officers hold the same position and are both accused of the same conduct, "failure to write a report," they were sufficiently "similarly situated" to support an inference of discriminatory intent).

Defendants attempt to complicate and expand the *Vasquez* "similarly situated" test by demanding information beyond what it required. They claim, *inter alia*, that Plaintiff must plead the identity of the supervising officer, the identity of the officer terminating the pursuit, the identity of the shift supervisor, the identity of all individuals who decided not to discipline the White officers, and so on. None of those facts were required by the Ninth Circuit in *Ballou*. It was sufficient that Ballou, a female police officer passed over for promotion, pled that she and her male comparator police officer who was promoted had both failed to write reports. *Ballou*, 29 F.4th at 424. The Court did not compare the different purposes or subject matters of the reports, nor did it inquire into the identify the supervisors who had originally disciplined them.

Defendants' argument that "the pursuit instances are too dissimilar and the alleged facts to conclusory and vague to sufficiently allege a claim for discrimination" is disingenuous. Dkt. 48 at

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

13:15-17. Defendants are well aware that PPD had a "no pursuit" policy during the time of Plaintiff's employment and that officers were routinely reminded in shift meetings that they were subject to discipline if they engaged in a pursuit. Defendants feign ignorance and pretend that "engaging in a pursuit" is some neutral act.

Defendants also *reject* Plaintiff's asserted facts and attempt to introduce their own when they claim that Plaintiff was "assigned to a specific detail before abandoning the detail to engage in the pursuit." Dkt 48, at 13:11-12. Plaintiff pleaded in the TAC that he was <u>ordered</u> by his on-scene supervisor to leave the detail and initiate the pursuit: "Corporal Benas (Plaintiff's direct supervisor) told Plaintiff to 'Go get it.'" TAC, at 5:27. Moreover, Plaintiff pleaded that while he was ordered to initiate a pursuit and then investigated and fired for it, some of the White comparator officers had done much worse, including lying to dispatch during a pursuit (TAC, at 5:4-5), and continuing a pursuit after being ordered to terminate (TAC, at 5:20-21).

## 2. Other Circumstances

In addition to pleading facts sufficient to satisfy the "similarly situated" prong of his claim, Plaintiff has also pleaded other circumstances that demonstrate "a discriminatory reason more likely than not motivated" Defendant Sokoloff to cause Plaintiff's termination. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Plaintiff has pled the following "other circumstances." Sokoloff openly held deeply racist beliefs about the supremacy of White people and the purity of Whiteness and White blood, which he shared frequently with Officer Moreno when he was her supervisor. TAC, at 5:1-6. Sokoloff expressed his open disapproval of "mixing races" because "you gotta keep the bloodlines clean." TAC, at 5:3-4. The fact that Sokoloff subscribed to a racist, anti-Black ideology was well-known within PPD. TAC, at 5:7-8. Sokoloff learned of Plaintiff's relationship with Officer Moreno sometime between late-February and mid-March 2021. TAC, at 5:11-18. On April 27, 2021, Sokoloff showed up at Plaintiff's detail to tell him that he was angry at him for engaging in the pursuit, despite the pursuit having been ordered by Cpl. Benas. TAC, at 6:4-6. Two days later, Plaintiff was served with a letter of intent for an Internal Investigation initiated by Sokoloff

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

regarding the April 27, 2021 pursuit. TAC, at 6:13-14. When Plaintiff asked Officer Bray why he was receiving such comparatively bad treatment, Bray told him it was due to Plaintiff dating Officer Moreno. TAC, at 6:16-18. In May 2021, a co-worker told Officer Moreno he had noticed how much "meaner" Sokoloff was to her ever since she entered a relationship with Plaintiff. In August when Officer Moreno contracted COVID, Sokoloff inserted himself into Plaintiff's relationship with Officer Moreno and ordered him to stop living with and having contact with Moreno. TAC, at 7:22-24. Approximately a month later, Plaintiff was completely blindsided when Capt. Maniss told him he was terminated for failing "to meet the standards and conduct of a Probationary Police Officer." TAC, at 8:20-26. Plaintiff gathered from Maniss' statements and behavior that Maniss believed the termination was improper and unjustified. TAC, at 8:25-9:1. The next day, Sokoloff called Officer Moreno into his office and told her he was responsible for getting Plaintiff fired. Several months later, Plaintiff was informed by a former Sergeant at PPD that Plaintiff was terminated because "[a] certain Lieutenant had feelings for your girlfriend." TAC, at 9:17-20.

Plaintiff contends that if the Court assumes the truthfulness of the material facts alleged in the TAC and views them in the light most favorable to Plaintiff, they support the reasonable inference that Plaintiff's termination was at least in some part due to Sokoloff's impermissible considerations of race. *See Vasquez,* 487 F.3d at 1249.

**B.    DEFENDANTS' CHALLENGES TO PLAINTIFF'S SECOND CLAIM ARE BASED ENTIRELY ON THEIR MISTAKEN READING OF THE TAC AND THIS COURT'S SEPTEMBER 30, 2024, ORDER**

Defendants continue to introduce confusion and unnecessary deliberation in this matter. They now come and accuse Plaintiff of violating this Court's September 30, 2024, Order – going so far as to suggest sanctions – when perhaps they simply did not read the TAC or the Order very carefully.

Defendants argue that Plaintiff's second claim under 42 U.S.C Section 1983 must be dismissed because "[i]n contravention to this Court's order granting Defendants' motion to

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

dismiss, the TAC alleges a new legal theory against Defendant Sokoloff." Dkt. 48, at 15:2-3. This "new theory," according to Defendants, is that "[Sokoloff] violated Plaintiff's constitutional right to associate with a member of another race." Dkt. 48, at 3-4. Defendants' argument appears to be premised entirely on a single phrase in the first paragraph of the TAC. *Id.*

However, Plaintiff's second cause of action mentions nothing about a "right to associate." TAC, at 10:21-11:17. Instead, had Defendants carefully read Plaintiff's *first claim against the City of Porterville alleging race discrimination in violation of Title VII* before filing its motion and suggesting sanctions, they would have seen that under *that claim* Plaintiff added the following: "EEOC decisions consistently have held that an employer who takes adverse action against an employee because of **interracial association** violates Title VII." TAC, at 9:27-10:1 (emphasis added). This is not a new claim or theory; it is simply a statement of precedent that supports Plaintiff's existing Title VII claims that Sokoloff discriminated against him due to his race. Plaintiff's first claim is not asserted against Defendant Sokoloff, nor was Plaintiff barred by the Court's order from amending it.

Defendants next argue that "the Court dismissed the [42 U.S.C. Section 1983] claim against Defendant Sokoloff with prejudice and found he is entitled to qualified immunity." Dkt. 48, at 15:2-3, 10-11. However, Defendants are mistaken about that as well.

The Court did not dismiss Plaintiff's *entire* Section 1983 claim against Sokoloff with prejudice. The Court only dismissed Plaintiff's second claim with prejudice "insofar as it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association." Dkt. 37, at 12:28-13:2 (emphasis added). The Court noted that Plaintiff's Section 1983 claim was also based on race discrimination. Dkt. 37, at 8, fn 1. It clarified that its discussion and decision on "the issue of qualified immunity is focused on the alleged right to intimate association," and granted Plaintiff leave to amend his Section 1983 claims against Sokoloff based on race discrimination. *Id.*

Finally, Defendants argue that the Section 1983 claim must be dismissed because the alleged new theory is barred by the two-year statute of limitations. As explained above, there is no

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

new theory in Plaintiff's second claim. The language in Paragraph 1 of the TAC relied upon by Defendants has nothing to do with the Section 1983 claim. Therefore, Defendants have submitted no viable grounds for a statute of limitations defense.

Defendants have failed to present any relevant argument in support of its motion to dismiss Plaintiff's second claim. Plaintiff therefore respectfully asks the Court to deny their motion as to this cause of action.

C.    **THE RIGHT TO SUE FOR DAMAGES FOR RACE DISCRIMINATION UNDER ARTICLE I, SECTIONS 8 AND 31 OF THE CALIFORNIA CONSTITUTION IS WELL-ESTABLISHED**

Defendants argue in error that "there is no private right of action for race discrimination under Article I, Sections 8 and 31 of the California Constitution." Dkt. 48, at 17:1-2.

In support of their erroneous argument, Defendants cite two California appellate decisions. However, neither of the two state cases address whether either Article I, Sections 8 or 31 of the California Constitution provides a private right of action for race discrimination.  The first case cited by Defendants simply holds that California Fair Employment and Housing Act's (FEHA) does not support a tort claim for wrongful termination based on disability brought by a National Guardsman on active duty when the challenged personnel action is incident to military service. *Estes v. Monroe,* 120 Cal.App.4th 1347, 1360 (2004) (holding "plaintiff's military status is relevant to our interpretation of the FEHA"). The second state case cited by Defendants was a taxpayer's action for a declaratory judgment and injunctive relief (not a damage claim), in which the Court held (1) no actual controversy existed to allow plaintiff to pursue his declaratory action; (2) no basis existed for injunction; and (3) "voter standing" was not conferred on plaintiff. *Connerly v. Schwarzenegger*, 146 Cal.App.4th 739 (Cal. Ct. App. 2007).

Defendants also cite a single District Court decision, *Himaka v. Buddhist Churches of America,* 919 F.Supp. 332 (N.D. Cal. 1995), but mischaracterize the holding in that case. The *Himaka* Court noted that, "it appears that there must exist a state tort law mechanism in order to bring a private cause of action to vindicate the public policy against discrimination underlying

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Article I, Section 8. *See Tameny v. Atlantic Richfield Co.,* 27 Cal. 3d 167, 176-77, 164 Cal. Rptr. 839, 610 P.2d 1330 (recognizing the state tort of wrongful termination in violation of public policy); *Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 665-69, 254 Cal. Rptr. 211, 765 P.2d 373 (1988) (describing the parameters of the tort)." *Himaka*, 919 F.Supp. at 335. But the Court went on to hold, "[W]hereas California courts have held that there is such a mechanism to redress wrongful discharge in violation of public policy, *Rojo*, 52 Cal.3d at 88–91, 276 Cal.Rptr. 130, 801 P.2d 373, no California court has recognized a comparable mechanism to redress wrongful failure to provide equal promotional opportunities or equal working conditions—the violations which plaintiff alleges." *Id.*  Thus, *Himaka* fails to support Defendants' argument that Article 1, section 8 does not provide Plaintiff in this case, who alleges constructive and wrongful discharge, a claim for monetary damages.

In fact, it is well established that a plaintiff alleging wrongful termination may bring a claim directly under Article I, Section 8 of the California Constitution. *See, e.g., Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 871 (9th Cir. 1996) ("We affirm the district court on the ground that a claim brought directly under Article I, § 8 of the California Constitution may only be brought where a plaintiff has been denied entrance into a profession or particular employment or terminated from the same); *Badih v. Myers*, 36 Cal.App.4th 1289 (Cal. Ct. App. 1995) (holding that a woman terminated because of pregnancy could maintain cause of action for wrongful discharge in contravention of public policy because § 8 prohibits pregnancy discrimination); *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc*., 3 Cal.App.4th 382, 387 (Cal. Ct. App. 1992) (holding that plaintiff could bring wrongful discharge claim based on § 8 because of public policy against national origin discrimination); *Carmichael v. Alfano Temporary Personnel*, 233 Cal.App.3d 1126, 1131-1132, (Cal. Ct. App. 1991) (finding wrongful termination claim based on policy against racial discrimination in § 8); *see also Merrell v. All Seasons Resorts, Inc.*, 720 F. Supp. 815, 819 (C.D. Cal. 1989) (finding private cause of action under § 8 where pregnant woman with permanent position was offered temporary position with fewer fringe benefits and voluntarily resigned); *Froyd v. Cook*, 681 F. Supp. 669, 673 n. 11, 676 (E.D. Cal. 1988) (former police

1  dispatcher alleging sexual harassment and retaliatory constructive discharge stated claim for

2  discharge in violation of public policy articulated in § 8); *Smithberg v. Merico, Inc*., 575 F. Supp.

3  80, 83 (C.D. Cal. 1983) (finding that employee who was allegedly discharged for objecting to

4  racial discrimination in the workplace stated claim under § 8).

5      In addition, Article 1, Section 31 ***expressly provides*** a private right of action for damages.

6  It is notable that although Defendants cite Article I, Section 31 and quote portions of its text, they

7  failed to quote the relevant text that is dispositive on the issue of the remedies available under

8  Article I, Section 31(g):

9      The remedies available for violations of this section shall be the same,

10     regardless of the injured party's race, sex, color, ethnicity, or national origin,

11     as are otherwise available for violations of then-existing California

12     antidiscrimination law.

13 Cal. Const., Art. I, § 31(g).

14 **VII.    CONCLUSION**

15     For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

16 motion to dismiss in its entirety.

17

18

19 Dated:  January 17, 2025              Respectfully submitted,

20

21                                     LAW OFFICES OF LAWRENCE J. KING

22                                     By:  __***/s/***_____

23                                          Lawrence J. King

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**