**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY LUCKEY,<br><br>          Plaintiff,<br><br>    v.<br><br>CITY OF PORTERVILLE, et al.,<br><br>          Defendants. | Case No. 1:23-cv-00551-BAM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. 48) |

Plaintiff Anthony Luckey ("Plaintiff") brings this action against Defendants City of Porterville and Bruce Sokoloff ("Defendants") asserting claims for race discrimination in violation of Title VII, deprivation of civil rights in violation of 42 U.S.C. § 1983, race discrimination in violation of the California Constitution, and race discrimination in violation of California's Fair Employment and Housing Act ("FEHA"). (Doc. 43.) Defendants previously moved to dismiss Plaintiff's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 21 at 1-2.) On September 30, 2024, the Court issued an order granting Defendants' motion (the "Order"), dismissing all claims with leave to amend. (Doc. 37.)

On November 8, 2024, Plaintiff filed a third amended complaint (the "TAC"). (Doc. 43.) On December 6, 2024, Defendants moved to dismiss Plaintiff's TAC, arguing that (1) the TAC still fails to state a prima facie case for race discrimination under Title VII or FEHA, (2) the Court has already dismissed Plaintiff's Section 1983 claim with prejudice, Plaintiff is asserting a new

theory of its Section 1983 claim, and that Plaintiff's new theory is time-barred by the statute of limitations, and (3) Article I, Sections 8 and 31 of the California Constitution do not afford a private right of action. (Doc. 48.) Plaintiff opposed Defendants' motion, arguing that (1) Plaintiff has pled adequate facts to meet the "similarly situated" and "other circumstances" prongs, (2) the Court did not dismiss Plaintiff's entire Section 1983 claim with prejudice, Plaintiff is not pleading a new theory of his Section 1983 claim, and the statute of limitations does not apply, and (3) the right to sue for damages for race discrimination under Article I, Sections 8 and 31 of the California Constitution is well-established. (Doc. 55.) Defendants replied to Plaintiff's opposition. (Doc. 56.)

The Court finds the motion suitable for decision without oral argument pursuant to Local Rule 230(g).[1] For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

I. **Summary of Third Amended Complaint**

   A. **Claims for Relief**

Plaintiff forwards the following claims for relief: (1) race discrimination in violation of Title VII against Defendant City of Porterville; (2) deprivation of civil rights in violation of 42 U.S.C. § 1983 against Defendant Sokoloff; (3) race discrimination in violation of the California Constitution against Defendant City of Porterville; and (4) race discrimination in violation of the FEHA against Defendant City of Porterville.

   B. **Summary of Allegations**

Plaintiff graduated from the Tulare-Kings Police Academy in February 2017 and was employed by the Tulare County Sherriff's Office from October 2017 to October 2020. (Doc. 43 ¶¶ 10, 16.) During Plaintiff's time at Tulare County Sherriff's Office, he was identified "as being a leader and a mentor for new officers," "provided special training" not typically available to the average Patrol Deputy "in recognition of his exceptional performance and potential," and completed SWAT School in Huntington Beach. (*Id.* ¶¶ 13, 12.) Plaintiff served in the Tulare

---

[1] The parties have consented to magistrate judge jurisdiction over this action for all purposes, including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 27, 28, 30.)

1  Area Gang and Narcotics Enforcement Team ("TAGNET"), where he acted as the lead
2  investigator on several gang-related violent crimes, authored dozens of search and arrest warrants,
3  completed several gang packets, and made dozens of entries as a SWAT operator. (*Id.* ¶ 14.)
4  During this time, Plaintiff alleges that he "never received a verbal or written reprimand." (*Id.* ¶
5  15.)
6      In November 2020, Plaintiff accepted a position as a patrol officer with the Porterville
7  Police Department ("PPD"). (*Id.* ¶ 17.) During Plaintiff's employment with PPD, he made over
8  one hundred and thirty-five arrests, including fifty felony arrests, twenty-five DUI arrests, forty-
9  five narcotics arrests, and recovered six firearms. (*Id.* ¶ 18.)
10     In January 2021, Plaintiff began a relationship with Officer Ana Moreno ("Officer
11 Moreno"), a White female PPD officer. (Doc. 43 ¶ 19.) Plaintiff is African American. (*Id.* ¶ 1.)
12 Plaintiff alleges that as a result of this relationship, Defendant Sergeant Bruce Sokoloff
13 "orchestrated a campaign to get Plaintiff fired after he learned that Plaintiff, a Black man, and
14 Officer Ana Moreno, a White woman, were in a romantic relationship and cohabitating because
15 he disapproved of interracial relationships," "attempted unsuccessfully to engage Officer Moreno
16 in a romantic relationship while he was her supervising Sergeant," and engaged in efforts to
17 "separate" Plaintiff and Officer Moreno. (*Id.*) Plaintiff alleges that Sokoloff made numerous
18 statements to Officer Moreno while he was her supervisor supporting the idea that his religion
19 "has very strict ideas about race, color, and genetics," including such statements as "You gotta
20 keep the bloodlines clean," "You don't mix with other races," and remarks concerning racial
21 purity. (*Id.* ¶ 20.) Plaintiff believes that Sokoloff became aware that Plaintiff and Officer
22 Moreno were dating in February 2021. (*Id.* ¶¶ 21-22.)
23     On or about April 27, 2021, Plaintiff was involved in a pursuit while assigned to a detail
24 with Corporal Benas, Plaintiff's direct supervisor, to provide security for extracted marijuana
25 plants that were pulled from a warehouse earlier in the day. (*Id.* ¶ 26.) Plaintiff and Corporal
26 Benas were parked facing a roadway, where they observed a vehicle fail to stop at an intersection
27 while speeding at approximately one hundred miles per hour. (Doc. 43 ¶ 26.) Corporal Benas
28 instructed Plaintiff to "[g]o get it." (*Id.*) Plaintiff caught up with the vehicle and initiated a traffic

stop, during which the suspect vehicle drove away. (*Id.*) Plaintiff then engaged in a pursuit and self-terminated the pursuit after the vehicle continued to dive recklessly. (*Id.*) The vehicle later crashed and the suspect was apprehended after fleeing on foot. (*Id.*) When Sergeant Sokoloff arrived on the scene, he indicated that he was upset that Plaintiff conducted a traffic stop while assigned on a detail. (*Id.*)

On or about April 29, 2021, Plaintiff was served with a letter of intent for an internal investigation initiated by Sokoloff concerning the pursuit. (Doc. 43 ¶ 28.) Plaintiff alleges that several White officers were involved in pursuits around this time who were not subject to disciplinary action from PPD. (*Id.* ¶¶ 23, 24, 31, 35.) Plaintiff states that he asked another officer why he was being subjected to discipline, to which they responded that "it was due to Plaintiff dating Officer Moreno and certain persons being jealous." (*Id.* ¶ 29.) Plaintiff alleges that he continued to be praised for his performance within the PPD (*id.* ¶ 27, 30, 40, 41), was told that a Personnel Incident Report stemming from the pursuit was not a "reflection of you," that PPD "really like[s] the work you're doing," (*id.* ¶ 33), that the Plaintiff "did not have anything to worry about" regarding the disciplinary action, and to "start looking at the 'bigger picture' as far as promoting." (*Id.* ¶ 34).

On September 30, 2021, Plaintiff was terminated from his position at PPD. (Doc. 43 ¶ 42.) He was informed that he had failed "to meet the standards and conduct of a Probationary Police Officer." (*Id.*) Plaintiff alleges that his impression of the conversation included that the Captain terminating him indicated "genuine remorse" during the termination. (*Id.*) Plaintiff further alleges that the Captain's words and behavior suggested that the Captain "believed the termination was improper and unjustified but was going along with it." (*Id.*) Plaintiff alleges that he had a conversation several months later with another PPD officer who had recently left PPD regarding why Plaintiff was fired. (*Id.*) Plaintiff provides that the officer stated that "[a] certain Lieutenant had feelings for your girlfriend." (*Id.*)

**II.     Legal Standard**

Dismissal is proper under Rule 12(b)(6) if a claim lacks a cognizable legal theory or if there is the absence of sufficient facts alleged under a cognizable legal theory. *Conservation*

4

*Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). A court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))

**III.   Discussion and Analysis**

   **A.   First and Fourth Claims (Race Discrimination)**

Defendant moves to dismiss Plaintiff's first and fourth claims on the basis that Plaintiff

1  fails to allege facts showing that similarly situated individuals outside his protected class were
2  treated more favorably, or other circumstances surrounding the adverse employment action give
3  rise to an inference of discrimination.  (Doc. 48 at 12-14.)  Defendant argues that (1) Plaintiff's
4  new allegations that five White officers involved in pursuit incidences because they were not
5  employed as Probationary Police Officers and were not assigned to a specific detail before
6  abandoning the detail to engage in a pursuit like Plaintiff did; (2) the pursuit instances are too
7  dissimilar and the alleged facts are conclusory and vague; (3) Plaintiff's allegation that Sokoloff
8  "orchestrated a campaign to get Plaintiff fired" fails to articulate sufficient facts as to what
9  Sokoloff did as a part of the campaign; and (4) any references to the "discriminatory campaign"
10 after Plaintiff started dating Ms. Moreno is too vague to create an inference of discrimination.
11 (Doc. 48 at 12-14.)

12     In opposition, Plaintiff asserts that his allegations are sufficient to satisfy the "similarly
13 situated" and "other circumstances" prongs of his prima facie case for race discrimination based
14 on disparate treatment.  Plaintiff asserts that (1) Defendants are overstating the requirements to
15 plead the "similarly situated" prong; (2) Defendants fail to acknowledge that PPD had a "no
16 pursuit" policy for all officers; (3) Defendants ignore that Plaintiff was ordered by his on-scene
17 supervisor to leave the detail and initiate the pursuit; (4) Plaintiff has pled the "other
18 circumstances," specifically that (a) Sokoloff openly held racist beliefs, which he shared with
19 Officer Moreno when he was her supervisor, (b) Plaintiff was told by another officer that his
20 disparate treatment was because he was dating Officer Moreno, (c) Plaintiff was ordered not to
21 contact Officer Moreno when she had COVID-19, and (d) Plaintiff was informed by a former
22 sergeant at PPD that he was terminated because "[a] certain Lieutenant had feelings for your
23 girlfriend."  (Doc. 55 at 6-8.)

24     Title VII makes it unlawful for an employer to discriminate based on an "individual's race,
25 color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).  A plaintiff in a disparate
26 treatment case must show by either direct or circumstantial evidence that "the motive to
27 discriminate was one of the employer's motives." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.
28 Ct. 2517, 2523 (2013); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  A

plaintiff may establish a case for disparate treatment by showing that he: (1) was a member of a protected class; (2) was qualified for the position and performing the job satisfactorily; (3) experienced an adverse employment action; and (4) that "similarly situated individuals outside [the] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett–Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004)). "[A]lthough a plaintiff alleging employment discrimination is not required to allege a prima facie case to survive a motion to dismiss, the prima facie elements are nonetheless valuable in determining whether plaintiff has alleged sufficient facts to state a claim that is plausible and not merely speculative." *Albro v. Spencer*, No. 1:18-cv-01156-DAD-JLT, 2019 WL 2641667, at *6 (E.D. Cal. June 27, 2019).

As the Court notes in its prior Order (Doc. 37 at 4 n.2), the FEHA "uses largely the same language and promotes the same objective as Title VII," and "the Title VII framework is applied to claims brought under . . . FEHA, including discrimination claims brought under a disparate treatment theory." *Freeling v. PCX, Inc.*, No. 8:23-cv-00173-DOC-KES, 2023 WL 6194259, at *4 (C.D. Cal. Aug. 15, 2023). Accordingly, the Court will therefore assess Plaintiff's Title VII and FEHA claims under the Title VII framework and federal law.

Here, Plaintiff alleges that he is a member of a protected class on the basis of race (Doc. 43 ¶ 1), he qualified for his position by education and experience (*id.* ¶¶ 10-17), was performing the job satisfactorily (receiving praise for his performance within the PPD (*id.* ¶ 27, 30, 40, 41), was told that the Department "really like[s] the work you're doing," (*id.* ¶ 33) and to "start looking at the 'bigger picture' as far as promoting" (*id.* ¶ 34)), and experienced an adverse employment action when he was terminated from his job. This leaves the fourth element as the key factor.

The question of whether two employees are similarly situated is "a question of fact." *Hawn*, 615 F.3d at 1157. "The employees' roles need not be identical; they must only be similar in all material respects." *Id.* (internal quotation marks and citation omitted). Generally, the Court has determined that "individuals are similarly situated when they have similar jobs and display

similar conduct." *Id.*

With respect to the fourth element, Plaintiff alleges that several similarly situated White officers were treated more favorably when they were involved in pursuits: (1) on or around March 9, 2021, Officer A. Hernandez was involved in a pursuit in which he advised dispatch he was not pursuing, despite having his siren activated and continuing to provide updates as the suspect vehicle continued to speed and run red lights, and no disciplinary action was taken (Doc. 43 ¶ 23), (2) on or around April 23, 2021, PPD Officer Sanders and Officer Scott were involved in a pursuit that continued after being terminated by the shift supervisor that ended with the suspect vehicle being involved in a traffic accident and neither officer received any form of discipline (*id.* ¶ 25), (3) on or around May 14, 2021, Officer R. Machiche was involved in a pursuit due to an incorrect belief that the vehicle was stolen, and no disciplinary action was taken (*id.* ¶ 31), and (4) on or around July 7, 2021, Officer Bray was involved in a pursuit and no disciplinary action was taken (*id.* ¶ 35). Because Plaintiff alleges employees outside of his protective class were treated more favorably, Plaintiff sufficiently establishes the fourth element.

In addition, viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged "other circumstances" giving rise to an inference of discrimination. The burden to produce enough evidence to support an inference of discrimination under Title VII's disparate-treatment provision is "not onerous." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Plaintiff alleges that he was in an inter-racial relationship with Officer Moreno. (Doc. 43 ¶ 1.) Plaintiff further alleges that Sokoloff made numerous statements to Officer Moreno regarding race, including "You gotta keep the bloodlines clean," "You don't mix with other races," and remarks concerning racial purity. (*Id.* ¶ 20.) These allegations are sufficient at this stage to give rise to an inference of discrimination.

The Court concludes that Plaintiff has stated a plausible claim for race discrimination in violation of Title VII and race discrimination in violation of the FEHA. Defendants' motion to dismiss claims one and four is DENIED.

///

**B.  Second Claim (*Monell* Liability)**

Plaintiff appears to assert his second claim only against Defendant Sokoloff.  (Doc. 43 at 10 ("Against Defendant Sokoloff").)  Another allegation contained within the TAC, however, asserts that "Defendant**s** deprived Plaintiff of rights secured to him by the Constitution" and that "Defendant Sokoloff's unconstitutional conduct was performed under color of law and was known and ratified by the authorized policymaker in the supervisory position above him, Captain Maniss."  (*Id.* ¶ 55.)

Municipalities "cannot be held liable [for the actions of their employees] under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 591 (1978).  Instead, the constitutional injury must occur during the execution of an official "policy or custom." *Id.* at 694.  "A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (3) the act of an 'official whose acts fairly represent official policy such that the challenged action constituted official policy'; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Bustamante v. County of Shasta*, No. 2:23-cv-01552-TLN-DMC, 2024 WL 3673529, at *2 (E.D. Cal. Aug. 6, 2024) (quoting *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008)).

Only ratification appears to be at issue. (*See* Doc. 43 at ¶ 55.)  A municipality may be liable under this theory if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346–1347 (9th Cir. 1992). "Ratification requires that the policymaker engage in a 'conscious, affirmative choice' to endorse a subordinate's conduct." *Bustamante*, 2024 WL 3673529 at *3, quoting Gillette, 979 F.2d at 1347.

To the extent that Plaintiff's TAC asserts *Monell* liability against the City of Porterville, Plaintiff does not state a plausible *Monell* claim.  The allegation that "Defendant Sokoloff's unconstitutional conduct was performed under color of law and was known and ratified by the authorized policymaker in the supervisory position above him, Captain Maniss" (*id.* ¶ 55) alone is conclusory and insufficient to state a *Monell* claim based on ratification against the City of

Porterville. *Bustamante v. Cnty. of Shasta*, No. 2:23-CV-01552-TLN-DMC, 2024 WL 3673529, at *3 (E.D. Cal. Aug. 6, 2024) (concluding that allegations certain officials with final policy-making authority had "direct knowledge of the facts of this incident" and "made a deliberate choice to endorse the decisions of [probation department employees] and the basis for those decisions" were "unclear, conclusory, and insufficient to state a *Monell* claim . . . based upon ratification"); *Thurston v. City of Vallejo*, No. 2:19-CV-1902-KJM-CKD, 2021 WL 1839717, at *6 (E.D. Cal. May 7, 2021) (finding that "simply listing a number of high-ranking individuals is not sufficient to allege a specific final policymaker" and "allegations that the policymakers 'ratified' or 'knew and/or reasonably should have known about' the alleged constitutional violations are conclusory").

Plaintiff fails to state a plausible *Monell* claim. Defendants' motion to dismiss the *Monell* claim against the City of Porterville, to the extent that the TAC asserts such a claim, is GRANTED. Any *Monell* claim will be dismissed without leave to amend.

### C. Second Claim – Deprivation of Civil Rights against Sokoloff (Qualified Immunity)

Defendants move to dismiss Plaintiff's second claim on the basis that the Court previously dismissed the claim that Defendant Sokoloff discriminated against Plaintiff by violating Plaintiff's right to associate with a member of another race.[2] (Doc. 48 at 15.) Defendant points to the Court's prior Order, which dismisses Plaintiff's Section 1983 claim "with prejudice insofar as it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association." (Doc. 37 at 11.) Defendant characterizes the second claim in the TAC as a "new legal theory." (Doc. 56 at 6 ("Plaintiff now attempts to revive this claim by reframing it as a violation of his right to associate with a member of another race.")). Defendant further argues that to the extent that Plaintiff's Section 1983 claim is based on a new

---

[2] In its prior Order, the Court noted that "Plaintiff's second claim alleges unlawful conduct by 'intentionally discriminating against him on the basis of his race and interfering with his intimate relationship with a white, Hispanic, female co-worker.' By this order, the Court grants leave to amend as to the claims based on race discrimination." (Doc. 37 at 8 n.3) (internal citation omitted).

10

legal theory, it is barred by the two-year statute of limitations set by California's personal injury statute. (Doc. 48 at 16.)

In opposition, Plaintiff asserts that the Court did not dismiss Plaintiff's entire Section 1983 claim against Sokoloff with prejudice. (Doc. 55 at 9.) Rather, Plaintiff argues that the Court dismissed Plaintiff's claim with prejudice only to the extent that "it seeks money damages from Sokoloff in his individual capacity for allegedly infringing upon Plaintiff's right to intimate association." (*Id.*) (quoting Doc. 37, at 12:28-13:2). Plaintiff also argues that he is not setting forth a new theory in Plaintiff's second claim and is instead providing additional detail to support the claim that Sokoloff discriminated against Plaintiff based on race. (Doc. 55 at 9 (noting that "Plaintiff added the following: 'EEOC decisions consistently have held that an employer who takes adverse action against an employee because of **interracial association** violates Title VII.'")) Plaintiff argues that the statute of limitations defense cannot apply because he is not bringing a new claim or theory. (*Id.* at 10.)

Defendant argues he is entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions generally" "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, police officers are not entitled to qualified immunity if (1) the facts "[t]aken in the light most favorable to the party asserting the injury" show that "the officer's conduct violated a constitutional right" and (2) "the right was clearly established" at the time of the alleged violation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). As the Supreme Court has opined, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and citations omitted). This Court may address these two prongs in either order. *Pearson*, 555 U.S. at 236.

The Court's prior order noted that Plaintiff has not identified any authority which held that a "dating" or close friend relationship is sufficiently intimate to warrant constitutional protection. *See Hittle v. City of Stockton*, No. 2:12-cv-00766-TLN-KJN, 2018 WL 1367451, at *15 (E.D.

11

Cal. Mar. 16, 2018) (identifying that neither the Ninth Circuit nor the Supreme Court has recognized a friendship, however close, as sufficiently intimate to warrant constitutional protection). The Court held that Plaintiff's alleged right to this kind of intimate association was not clearly established at the time of the challenged conduct and accordingly Sokoloff is entitled to qualified immunity. (Doc. 37 at 11.)

Plaintiff's TAC has not pled additional facts to address the deficiencies identified in the Court's prior Order. (Doc. 37 at 10-11.) Accordingly, Plaintiff's second claim for relief against Defendant Sokoloff is dismissed with prejudice.

### D. Third Claim (Race Discrimination in Violation of California Constitution)

Defendants move to dismiss Plaintiff's third claim on the basis that Article I, Sections 8 and 31 of the California Constitution do not contain a private right of action for race discrimination. Defendants assert that the FEHA is the primary state law that provides a private right of action for employment discrimination—including race discrimination—in California, and that there is no authority supporting Plaintiff's stand-alone Constitutional claim. (Doc. 48 at 16-17.)

In opposition, Plaintiff asserts that the cases cited by Defendant are inapposite and do not support Defendants' argument. (Doc. 55 at 10-11.) Rather, Plaintiff asserts that it is "well-established" under case law that a plaintiff alleging wrongful termination may bring a claim directly under Article I, Sections 8 and 31 of the California Constitution. (Doc. 55 at 11-12.)

Article 1, Section 8 of the California Constitution provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Cal. Const. art. I, § 8. The standard that Plaintiff must meet mirrors that for a violation of FEHA. *Jackson v. DSC Logistics, Inc.*, 2016 WL 11755179, at *6 (C.D. Cal. July 19, 2016).

Article 1, Section 31 of the California Constitution provides that "[t]he State shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." Cal. Const. art. I, § 31.

The Ninth Circuit has analyzed discrimination claims under Article I, § 8 of the California Constitution. *See Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 871 (9th Cir. 1996) ("We affirm the district court on the ground that a claim brought directly under Article I, § 8 of the California Constitution may only be brought where a plaintiff has been denied entrance into a profession or particular employment or terminated from the same."). Claims under Art. 1, § 8 may be brought by plaintiffs who have been terminated by their employer. *Bragg v. E. Bay Reg'l Park Dist.*, No. C-02-3585-PJH, 2003 WL 23119278, at *5 (N.D. Cal. Dec. 29, 2003). Furthermore, this District has expressly found that a claim could be made through state tort law mechanism in order to bring private cause of action under California constitutional amendment. *Scott v. Solano Cnty. Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 970 (E.D. Cal. 2006) ("Nowhere in [*Himaka*] did the district court conclude that monetary damages are not allowed under Section 8.") (citing *Himaka v. Buddhist Churches of America,* 919 F.Supp. 332, 334–35 (N.D. Cal. 1995)).

Defendants bear the burden of establishing that Plaintiff has failed to state a claim under Rule 12(b)(6). Defendants have not established that Plaintiff has failed to state a claim, and has not provided substantive arguments against recognition of an Article I, Sections 8 and 31 claim. *See Parks v. Bd. of Trs. of California State Univ.*, No. 1:09-CV-1314 AWI GSA, 2009 WL 10692084, at *8 (E.D. Cal. 2009) ("Because Defendants cite non-article I, Section 31 cases and do not adequately develop a substantive argument that no private right of action exists, dismissal on this ground is inappropriate.")

Defendants' motion to dismiss Plaintiff's claims for relief under the California Constitution is DENIED.

**IV.    Leave to Amend**

The Court's discretion to deny such leave is "particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotation marks and citation omitted). Plaintiff has had four chances to assert his claims. In its prior order, the Court indicated that this would be Plaintiff's final opportunity to amend to cure the identified pleading deficiencies. (Doc. 37 at 12.)

Accordingly, Plaintiff will not be granted an additional opportunity to amend his complaint with regard to any claims that have been dismissed herein.

**V.      Conclusion And Order**

For the reasons stated, IT IS HEREBY ORDERED as follows:

1. Defendants' motion to dismiss (Doc. 48) is GRANTED as follows:
    a. Defendants' motion to dismiss the second claim for relief alleging a *Monell* claim against the Defendant City of Porterville and the 42 U.S.C. § 1983 claim against Defendant Sokoloff is GRANTED without leave to amend.
2. Defendants' motion to dismiss (Doc. 48) is DENIED as follows:
    a. Defendants' motion to dismiss Plaintiff's first and fourth claims for relief alleging Title VII and FEHA discrimination premised on a theory of disparate treatment is DENIED.
    b. Defendants' motion to dismiss Plaintiff's third claim for relief alleging race discrimination in violation of Article I, Sections 8 and 31 of the California Constitution is DENIED.
3. The remaining Defendant shall file an answer to the TAC within twenty-one (21) days of the date of this Order.

IT IS SO ORDERED.

Dated:   **September 30, 2025**             /s/ *Barbara A. McAuliffe*
                                             UNITED STATES MAGISTRATE JUDGE